O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE JEAN G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 8:19-cv-00521-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## PROCEDURAL BACKGROUND

In February 2012, Plaintiff Laurie Jean G. ("Plaintiff") applied for Title II and Title XVI disability benefits alleging a disability onset date of September 29, 2010. Administrative Record ("AR") 192-200.

**A. The First Appeal.**

On September 11, 2013, and March 17, 2014, Administrative Law Judge ("ALJ") John Kays conducted hearings at which Plaintiff, who was represented by

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

an attorney, appeared and testified, as did a vocational expert ("VE"). AR 46-69. On April 4, 2014, the ALJ issued an unfavorable decision. AR 28-45.

The ALJ found that despite suffering from degenerative disc disease of the cervical spine and left shoulder derangement, Plaintiff retained the residual functional capacity ("RFC") to do sedentary work with some additional limitations, including (1) "sit for 6 hours but stand and walk 2-3 hours" and (2) "cannot engage in any overhead lifting bilaterally." AR 35. Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could still perform her past relevant work as a receptionist. AR 40.

Plaintiff appealed to the District Court. See Gribben v. Colvin, Central District of California case no. 15-1602 ("Gribben I"). Plaintiff raised three claims of legal error, arguing that the ALJ failed to: (1) discuss the opinion Dr. Johnson, a State Agency psychological consultant, concerning functional limitations caused by Plaintiff's mental health conditions, (2) account for conflicts between the Dictionary of Occupational Titles ("DOT") and the VE's testimony (i.e., per the DOT, working as a receptionist requires "frequent" reaching, but the VE testified that a hypothetical person restricted against "overhead lifting bilaterally" could work as a receptionist), and (3) provide clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony.[2] (Gribben I, Dkt. 20 at 4.)

---

[2] The ALJ gave several reasons in his initial decision for discounting Plaintiff's testimony (see AR 39) but did not note that some doctors believed that Plaintiff was malingering. A 30-pound padded palm tree fell on Plaintiff's left shoulder blade on May 8, 2010, while she was working at Home Depot. See AR 543, 588. On May 10, 2010, Dr. Mark Newman noted, "The patient['s] complaints . . . appear more subjective greater than objective and her movements are easy, full and without hesitation which is completely inconsistent with the above alleged pain level of '7/10.' There are no signs of trauma . . . Suspected malingering." AR 548-49. Nine days later, Dr. Newman stated that Plaintiff's complaints indicated "gross embellishment." AR 551. On June 1, 2010, Dr. Newman noted that Plaintiff's new complaints of pain to other areas was "inconsistent with the mechanism of injury as well as dermatomal distribution of the pins and needles

The District Court issued an opinion agreeing with Plaintiff's first and second claims of error and declining to address the third. The District Court remanded the case for further administrative proceedings with the following instructions:

> On remand, the ALJ must discuss Dr. Johnson's opinions and determine their credibility in assessing whether Plaintiff's RFC should include limitations due to her mental impairments. The ALJ must also elicit further testimony from the VE concerning the apparent inconsistency between the VE's testimony and the DOT. For clarity, when describing the reaching requirements of receptionist work, the VE may need to distinguish between overhead reaching versus reaching at or above the shoulder, but still below the head. The Court does not reach Plaintiff's other claims of error. Upon remand, the ALJ may wish to consider them.

---

sensation." AR 560. In August 2010, an orthopedic surgeon opined that an MRI of the left shoulder revealed no significant rotator cuff pathology, but some thinning of the rotator cuff was consistent with a partial-thickness rotator cuff tear and there was some swelling consistent with mild tendinosis. AR 334. In September 2010, Dr. Newman noted that "everyone is getting away from the initial mechanism of injury in which a palm tree hit her left scapula without any evidence of trauma," and that he found it "interesting" that the "patient has now gone for almost 4 months without any improvement, and now multiple complaints based on the above with multiple injections . . . without improvement," claiming that her pain was "10/10" with "0% improvement" with Vicodin and physical therapy not helping at all. AR 603-04. Thus, a "relatively simple contusion of the left upper back with embellishment (in [his] opinion) has morphed . . . without any improvement now involving areas far beyond the original complaints." AR 605. In August 2011, a different orthopedic surgeon noted "a little bit of exaggeration of symptoms." AR 597. An examining physician noted in June 2012 that there was "some voluntary inhibition of motion present," given that one side of Plaintiff's grip had less than half the grip of the other hand, despite no atrophy. See AR 719. The parties do not raise this issue in this second appeal and thus the Court does not address it.

3

Gribben I, Dkt. 21 at 8.

**B. The Second Appeal.**

Upon remand, ALJ Kays conducted another hearing on August 21, 2017. AR 1271-85. The VE testified receptionist work can typically be performed without overhead or at-or-above-the-shoulder reaching. AR 1281-84. On September 18, 2017, ALJ Kays issued another unfavorable decision. AR 1252-70. The decision discussed Plaintiff's mental health evidence and concluded that none of Plaintiff's mental impairments were severe. AR 1255-56. In his RFC analysis, ALJ Kays concluded that Plaintiff was still restricted against "overhead lifting" but he changed his walking/standing and sitting limitations slightly. The ALJ found that Plaintiff could perform "a range of sedentary work as defined in 20 CFR § 404.1567(a) and 416.967(a) and SSR 83-10, specifically as follows: … she can stand and/or walk for two hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday …." AR 1257. He explained that he had made this slight change to the amount of daily walking/standing (i.e., limiting Plaintiff to 2 hours instead of 2-3 hours) to account for Plaintiff's "recent treatment history" and her "subjective complaints." AR 1263. He again found that Plaintiff was not disabled, because she could work as a receptionist. AR 1263-64.

Plaintiff sought review by the Appeals Council. AR 1238-46. Plaintiff submitted new evidence to the Appeals Council including an Occupational Requirements Survey ("ORS") addressing the exertional requirements of working as a "receptionist or information clerk." AR 1242-45.

The Appeals Council denied review, explaining why, despite the ORS data, the ALJ could rely on the VE's testimony and Plaintiff's work history reports (which did not identify reaching as a job duty) to find that neither the manner in which reception work is typically performed, nor the manner in which Plaintiff actually performed it, is inconsistent with a restriction against overhead reaching. AR 1232. The Appeals Council did not address Plaintiff's contention that, per the

ORS, "less than 25% of receptionists require sedentary exertion." AR 1240. The Appeals Council made the four pages of ORS data part of the record. AR 1235.

## II.
## ISSUE PRESENTED

<u>Issue One</u>: Whether the ALJ's finding that receptionist work (DOT 237.367-038) constitutes Plaintiff's "past relevant work" is supported by substantial evidence.

<u>Issue Two</u>: Whether "the court should defer to Social Security Ruling 83-10 on the requirements of sedentary work as described by the ALJ."

<u>Issue Three</u>: Whether remand is required to permit the ALJ to consider new evidence: (1) 41 pages of 2017 ORS data about "receptionists and information clerks" (Dkt. 23-1) and (2) 33 pages of similar 2018 ORS data (Dkt. 23-2). (Dkt. 23 Joint Stipulation ["JS"] at 5.)

## III.
## DISCUSSION

### A. **ISSUE ONE: Plaintiff's Past Relevant Work.**

#### 1. **Relevant Administrative Definitions.**

At step four of the sequential evaluation process, the ALJ considers whether a claimant's RFC is consistent with his or her past relevant work ("PRW"). To qualify as PRW, (1) the claimant must have performed the work within the 15 years prior to the date of decision; (2) the work must have lasted long enough that the claimant learned how to do it; and (3) the work must have constituted substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1560, 416.960. Work is generally considered SGA if it meets or exceeds threshold earning requirements. <u>See</u> https://www.ssa.gov/OACT/COLA/sga.html (table providing monthly income threshold for SGA for non-blind claimants for the years 1975-2020).

#### 2. **Summary of Relevant Evidence and Arguments.**

In her work history reports, Plaintiff was asked to identify all jobs that she

had held in the last 15 years.  AR 239.  She initially identified three: (1) a garden retail associate at Home Depot, (2) a school noon-duty supervisor, and (3) "reception" work at "office" type businesses.  Id.  She did the reception work from August 1997 through October 2005.  Id.  She explained that her reception work involved "office duties" such as using office equipment, writing reports, and carrying files.  AR 254.

Later, Plaintiff identified three more jobs at (1) Target (from October 2005 to May 2006); (2) Aerofit Products (from August 2001 to June 2002); and (3) Select Personnel (from August 2000 to October 2003).  AR 282.  She described her work for Select Personnel, a temporary staffing agency, as "office work, reception, answered phones."  AR 287.  When asked at a hearing about her work for other temporary staffing agencies, Plaintiff confirmed that she worked as a receptionist and "it was the same thing as lifting and filing."  AR 67.

### a. 2003.

In 2003, Plaintiff earned $11,435.57 collectively from two temporary staffing agencies (i.e., Kelly Services, Inc. and Koosharem, LLC) and FedEx Office and Print Services.  AR 217.  This equates to $952.96 a month, which was presumptively SGA in 2003.  See Programs Operations Manual System ("POMS") DI 10501.015 ($800.00 per month qualified as SGA in 2003 for a non-blind individual).

Plaintiff contends that this analysis is wrong, because (1) there is no evidence that she worked as a receptionist at FedEx, and (2) if one does not count her FedEx income, then her 2003 work did not reach the SGA threshold.  (JS at 7, 12.)

Respondent responds that there *is* evidence that Plaintiff worked in 2003 at FedEx as a receptionist, citing Plaintiff's work history report which states that she worked as a receptionist from August 1997 to October 2005 and which fails to identify any other kind of work that might conceivably apply to her 2003 work at

FedEx.  (Id. at 11, citing AR 251.)

Plaintiff counters that per her work history report, her receptionist work was only in an "office" setting, which may or may not describe work at FedEx Office and Print Services.  (Id. at 12.)

        b.  2004.

In 2004, Plaintiff earned $9,795.50 from two temporary staffing companies, Headway Corporate Staffing Services of West, LLC and Koosharem, LLC.  AR 217-18.  This equates to $816.29 a month, which was presumptively SGA in 2004.  See POMS DI 10501.015 ($810.00 per month qualified as SGA in 2004 for a non-blind individual).

Plaintiff concedes that her 2004[3] earnings "equate to more than $810 per month" but argues that it would "require[] the speculation that both employers constituted work as a receptionist and nothing more."  (JS at 7.)

### 3. Analysis.

        a.  Waiver and Law of the Case Doctrine.

In ALJ Kay's first decision, he found that reception work constituted Plaintiff's past relevant work.  AR 40.  Plaintiff did not challenge that finding in Gribben I.  The District Court's remand order did not instruct the Commissioner to reconsider whether reception work constituted Plaintiff's past relevant work.  Plaintiff points to no new evidence submitted post-remand that would be relevant to the determination of Plaintiff's past relevant work.

The Court is inclined to find that, under the waiver doctrine, Plaintiff has waived any challenge to the ALJ's finding that reception work constituted Plaintiff's past relevant work.  Plaintiff did not raise this argument to the ALJ, the Appeals Council, or this Court at any point in her first appeal.  See United States v. Radmall, 340 F.3d 798, 802 (9th Cir. 2003) ("When a party could have raised an

---

[3] Plaintiff mistakenly refers to these as her "2003" earnings.

issue in a prior appeal but did not, a court later hearing the same case need not consider the matter." (quoting United States v. Nagra, 147 F.3d 875, 882 (9th Cir. 1998)); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We now hold that, at least when Plaintiffs are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) (en banc) (affirming that Meanel is still binding with respect to proceedings before an ALJ).[4] Last, the law of the case doctrine would likely prohibit considering this issue now. See Stacy v. Colvin, 825 F.3d 563, 567 (9th Cir. 2016) ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case . . . . Here, there were two prior step 4 findings by ALJs that Stacy could not perform his past work. Although these findings were never affirmed by the district court on review, this is typically the type of determination that should not be reconsidered under the law of the case doctrine.").

b. Substantial Evidence Supports the ALJ's PRW Finding.

Even without waiver and the law of the case doctrine, Plaintiff's arguments fail. At step four, Plaintiff bears the burden of proving the absence of past relevant work. Tackett v. Apfel, 180 F.3 1094, 1100-01 (9th Cir. 1999). As a result, Plaintiff's arguments pointing to purported gaps in the evidentiary record would fails to demonstrate legal error, even if such gaps existed. Plaintiff knows the

---

[4] While Shaibi and Meanel did not address SGA, both cases addressed situations where, as here, the ALJ would be in the best position to resolve conflicts of evidence. See Meanel, 172 F.3d at 1115 (noting that ALJ rather than Court was in "optimal position to resolve . . . conflict between Meanel's new evidence [of number of surveillance systems monitor jobs] and the statistical evidence provided by the VE"); Shaibi, 883 F.3d at 1109 (noting that this principle applies with "force" where claimant argued for first time in federal district court that VE's job estimates deviated from other sources).

8

nature of her past work. To the extent she chose not to disclose it in her work history reports, as she was required to do, she cannot blame the lack of evidence on the ALJ's purported failure to develop the record.

Furthermore, she has not demonstrated the existence of legally significant gaps in the evidentiary record. Regarding 2003, Plaintiff's representation that she worked as a receptionist in 2003 (AR 251), coupled with earnings records showing 2003 earnings from FedEx Office and Print Services (AR 217) and Plaintiff's failure to identity any other kind of work she did in 2003 that might conceivably describe her work at FedEx, provides substantial evidence to support the ALJ's implicit finding that Plaintiff worked as a receptionist for FedEx.

Regarding 2004, Plaintiff's earnings are from temporary staffing agencies. Her testimony that her work for temporary staffing agencies was "all the same" and her job title was receptionist (AR 67) coupled with her work history report (AR 239) provides substantial evidence to support the ALJ's implicit finding that Plaintiff worked as a receptionist for Headway and Koosharem.

**B. ISSUE TWO: Sedentary Work.**

**1. Summary of Plaintiff's Argument.**

Plaintiff argues that there is an apparent conflict between the VE's testimony and the Dictionary of Occupation Titles ("DOT")[5] (see JS at 15), which ordinarily would require the ALJ to ask the VE "to reconcile the conflict before relying on the expert to decide if the claimant is disabled." Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016).

Per the VE, a hypothetical person limited to standing or walking for "no more than two hours" and who can sit for six hours could work as a receptionist. AR 1281. The VE based that opinion on the DOT's classification of receptionist

---

[5] The DOT is a resource compiled by the Department of Labor that details the specific requirements for different occupations.

9

work as "sedentary" and his own experience confirming that. AR 1282.

According to Plaintiff, the VE's testimony was self-contradictory, because the DOT leaves open the possibility that a sedentary position would require more than six—i.e., up to eight—hours of sitting in a workday. (JS at 15.) Plaintiff also argues that under Kisor v. Wilkie, 139 S. Ct. 2400 (2019),[6] the Court should not defer to Social Security Ruling ("SSR") 83-10, which states that work qualifies as sedentary if sitting totals "approximately 6 hours of an 8-hour workday." (JS at 15-18.) According to Plaintiff, SSR 83-10 creates a six-hours-of-sitting ceiling for sedentary work that is inconsistent with the DOT and applicable regulations. (See JS at 16.)

**2. Analysis.**

Even assuming that SSR 83-10 is not entitled to Auer deference, there is no apparent conflict between the VE's testimony and the DOT. The DOT defines "sedentary work" as involving "sitting most of the time, but may involve walking or standing for brief periods of time." DOT, Appendix C, 1991 WL 688702. The DOT then clarifies that jobs still qualify as sedentary if "walking and standing are

---

[6] SSRs are authoritative statements of the SSA's interpretation of its own regulations which are owed deference under the standard set forth in Auer v. Robbins, 519 U.S. 452, 461 (1997). See Bray v. Comm'r of SSA, 554 F.3d 1219, 1225 (9th Cir. 2009). Under Auer, an agency's interpretation of its own regulations would be upheld unless "plainly erroneous or inconsistent with the regulation." See Auer, 519 U.S. at 461. Kisor "restate[d]" and "expand[ed] on" Auer, holding that an agency's interpretation of a regulation is entitled to deference under Auer if five criteria are met: (1) the regulation must be genuinely ambiguous after the court has exhausted all the traditional tools of construction; (2) the interpretation must be reasonable, falling within the zone of ambiguity the court has identified after employing all its interpretive tools; (3) the character and context of the agency interpretation must entitle it to controlling weight as the agency's authoritative or official position; (4) the agency's interpretation must in some way implicate its substantive expertise; and (5) the agency's reading of a rule must reflect fair and considered judgment, that is more than a convenient litigating position or a post hoc rationalization. See Kisor, 139 S. Ct. at 2415-18.

required only occasionally," i.e., "up to 1/3 of the time" or for about 2.5 hours out of an 8 hour day. Id.

The VE considered whether persons limited to sitting for six hours per day could do receptionist work as that work is typically performed; the VE opined that they could. AR 1281. This is consistent with the DOT, which states that even jobs that require two hours of sitting and walking would qualify as sedentary. Thus, even assuming SSR 83-10 is not entitled to Auer deference, the ALJ's finding that Plaintiff could perform her past work as a receptionist as generally performed was supported by substantial evidence—i.e., the VE's testimony. See Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (VE's testimony amounts to substantial evidence supporting ALJ finding).

Furthermore, Plaintiff mischaracterizes SSR 83-10. SSR 83-10 does not imply a de facto cap of six hours of sitting for sedentary work. SSR 83-10 provides that, for sedentary work, "periods of standing or walking should *generally* total no more than about 2 hours of an 8-hour workday, and sitting should *generally* total *approximately* 6 hours of an 8-hour workday." 1983 WL 31251, at *6 (emphasis added). "Generally . . . approximately" six hours a day does not mean a *maximum* of six hours a day. On the contrary, the only maximum contained in this citation is a cap on the amount of standing and walking, and even that is qualified by the words "generally" and "about." Thus, SSR 83-10 is consistent with the regulations, which define sedentary work as work that "involves sitting," while a "certain amount of walking and standing is often necessary." 20 C.F.R. §§ 404.1567(a), 416.967(a); see Bray v. Comm'r, SSA, 554 F.3d 1219, 1224 (9th Cir. 2009) (SSRs "reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.") (internal citation omitted).

C. **ISSUE THREE: New Evidence.**

   **1. Summary of Plaintiff's Argument.**

Plaintiff explains that since she provided ORS data to the Appeals Council, the Bureau of Labor Statistics ("BLS") has published new ORS data for 2017, 2018, and 2019. (JS at 23.) Plaintiff contends that the statistical data demonstrates that working as a receptionist generally requires eight hours of sitting. (Id. at 24.)

   **2. Rules Governing Remand for Consideration of New Evidence.**

This Court bases its review on the evidence that was presented to the ALJ or accepted by the Appeals Council, which constitutes the "record as a whole." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012). Regardless of whether evidence was submitted to the Appeals Council, a district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To demonstrate good cause, a claimant must show that the new evidence was unavailable earlier. Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir. 2001) (quoting Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.")). Evidence is material only if there is a "reasonable possibility that the new evidence would have changed the outcome" if it had been before the ALJ. Id. at 462.

   **3. Remand is Not Required for Consideration of New ORS Data.**

   a. Good Cause.

Plaintiff's counsel declares that most of the relevant data was released in December 2017 and 2018. (JS at 31, ¶¶ 2-3.) He attaches to his declaration two exhibits totaling seventy-four pages of data printed from "Occu Collect." (See

12

Dkt. 23-1, 23-2.) He declares that he has a 51% financial interest in Occu Collect, that the "majority of the data, but not the reports or the format, are available from Department of Labor sites," and that he "directed the development of the website to make gathering and reporting BLS data easier for Social Security practitioners." (JS at 31, ¶ 6.)

The Appeals Council did not act on Plaintiff's request for review until January 28, 2019. AR 1231. Plaintiff has failed to demonstrate good cause for her failure to provide this data to the Appeals Council earlier. To the extent Plaintiff argues that she has good cause for not providing data released after January 28, 2019, to the Appeals Council (see JS at 24), she has, as explained below, failed to established materiality.

### b. Materiality.

The challenged decision considers whether Plaintiff could do her PRW as a receptionist as of September 18, 2017. AR 1270. Plaintiff fails to explain why vocational data from 2018 and 2019 is relevant, and thus fails to establish materiality. As for the 2017 data, the Appeals Council already had before it similar (if incomplete) data from 2017, but it affirmed the ALJ's decision. See AR 1243-45. As Plaintiff all but admits, her argument hinged on her contention that the Court should not defer to SSR 83-10. (See JS at 24 ["Statistical data demonstrates that the reading of Social Security Ruling 83-10 as describing sedentary work as having a maximum sitting requirement of six hours in an eight-hour day is wrong."].) This argument failed, as explained above, making this data even more immaterial.

Furthermore, the proposed exhibits are printouts from the Occu Collect website. Plaintiff's counsel has "a 51% financial interest in the website …. The majority of the data, but not the reports or the format, are available from Department of Labor sites." (JS at 31, ¶ 6.) Plaintiff has failed to demonstrate that, if the case were remanded, the ALJ would consider these printouts from a

13

financially-interested source sufficiently reliable to refute the VE's expert opinion.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: February 06, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge